UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH PIKOULAS<br><br>　　　　　　　　　Plaintiff(s),<br><br>-against-<br><br>SMITH & WESSON BRANDS, INC., D&L SHOOTING SUPPLIES, INC., LONG ISLAND GUN SOURCE LLC, and NORMA PRECISION AMMUNITION INC., FORMERLY KNOWN AS RUAG AMMOTEC USA, INC.,<br><br>　　　　　　　　　Defendants. | Case No. 23-cv-1051<br><br>**NOTICE OF REMOVAL**<br><br>**JURY TRIAL DEMANDED** |

TO: THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK; AND PLAINTIFF ABOVE-NAMED.

**PLEASE TAKE NOTICE** that Defendant Norma Precision Inc. i/s/h/a Norma Precision Ammunition, Inc. ("Norma"), by and through undersigned counsel, hereby submits this Notice of Removal of the above-entitled action from the Supreme Court of the State of New York, County of Suffolk, to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  In support of its Notice of Removal, Norma states as follows:

**I.   INTRODUCTION**

1. Defendant Norma desires to exercise its right under the provisions of 28 U.S.C. §§ 1441, *et seq.*, to remove this case from the Supreme Court of the State of New York, County of Suffolk where this case was pending under the case style of *Kenneth Pikoulas v. Smith & Wesson Brands, Inc., D&L Shooting Supplies, Inc., Long Island Gun Source LLC, and Norma Precision Ammunition Inc., Formerly Known as RUAG Ammotec USA, Inc.* Index Number 207970/2022. Specifically, 28 U.S.C. § 1441 provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

2. Plaintiff Kenneth Pikoulas ("Plaintiff") alleges that on December 28, 2019 he was severely injured in an undescribed event involving a claimed failure of a S&W .357 Magnum Revolver, Model 586 ("Subject Revolver") and/or the ammunition he fired in the Subject Revolver ("Subject Ammunition"). (*See* Summons and Complaint, NYSCEF[1] Doc. 1 (hereinafter "Plt. Compl."), annexed hereto as **Exhibit A** at ¶¶ 36, 83, and 84.)

3. Plaintiff seeks damages for personal injuries that he describes as "serious injuries[.]" (**Ex. A,** Plt. Compl. at ¶ 78.) Plaintiff further claims "to have suffered pain, shock, mental anguish; that these injuries and their effects will be permanent; as a result of said injuries plaintiff was caused and will continue to be caused to incur expenses for medical care and attention; and plaintiff was and will continue to be rendered unable to perform plaintiff's normal activities and duties and to sustain the resultant loss therefrom." (*Id.*)

4. Though not directly addressed in the Complaint, Plaintiff allegedly suffered an injury to his left eye which he claims has left him at least partially blind in the eye. (*See* January 30, 2023 Auletta email (hereinafter the "Auletta Email"), annexed hereto as **Exhibit B**.)

5. Plaintiff has refused to stipulate that his damages are less than $75,000. (*See* **Ex. B**., Auletta Email.)

---

[1] All citations to NYSCEF documents are to those filed in *Pikoulas v. Smith & Wesson Brands, Inc., et al.,* Suffolk Cnty. Sup. Ct. Dkt. No. 207970/2022.

6.      Based upon information provided by Plaintiff's counsel, and as partially addressed in the Complaint, Defendant Norma is named as a defendant because Plaintiff believes it, or its claimed predecessor, RUAG Ammotec USA, Inc., manufactured the ammunition at issue in the case.[2] (*See* **Ex. A,** Plt. Compl. at ¶¶ 36-39; **Ex. B**., Auletta Email.)

7.      Based upon information provided by Plaintiff's counsel, and as partially addressed in the Complaint, Defendant Smith & Wesson Brands, Inc. ("Smith & Wesson") is named as a defendant because Plaintiff believes it designed and/or manufactured the Subject Revolver. (*See* **Ex. A,** Plt. Compl. at ¶¶ 36-39; **Ex. B**., Auletta Email.)

8.      Based upon information provided by Plaintiff's counsel, Plaintiff purchased the subject ammunition from an entity which is no longer in business and was not named as a defendant in the Complaint.  (*See* **Ex. B**, Auletta Email.)

9.       Based upon information provided by Plaintiff's counsel, and as partially addressed in the Complaint, Plaintiff purchased the Subject Revolver online from Defendant D&L Shooting Supplies, Inc. ("D&L").  (*See* **Ex. B**, Auletta Email.)

10.     Because D&L is located outside of New York, the Subject Revolver had to be transferred to Plaintiff by an in-state Federal Firearms Licensee post-purchase after Plaintiff completed a background check, which in this case was Long Island Gun Source, LLC ("LI Gun Source").  (*See* **Ex**. **B**, Auletta email.)

11.     Defendant LI Gun Source was not the manufacturer, seller, or distributor of the Subject Revolver.  Rather, LI Gun Source simply transferred possession of the Subject Revolver,

---

[2] The Complaint incorrectly states that all the Defendants were the manufacturer, seller and distributor of the Subject Revolver and Subject Ammunition, but Plaintiff's counsel clarified these inaccuracies in subsequent communications. (*See* **Ex. B**, Auletta email.)

which was previously purchased out of state, from the seller, D&L, to the purchaser in New York in accordance with federal law.

12. The summons was dated December 13, 2022 and efiled December 14, 2022. (*See* **Ex. A,** Plt. Compl. at 1.)

13. On January 13, 2023, Allen Sysco, President of D&L was served with the Summons and Complaint. (*See* Affidavit of Service of Paul Hughes dated January 18, 2023, NYSCEF Doc. 2 (hereinafter the "Hughes Aff."), annexed hereto as **Exhibit C**.)

14. On January 10, 2023, Smith & Wesson was served with a copy of Plaintiff's Summons and Complaint via a clerk in the Office of the Secretary of the Commonwealth of Massachusetts. (*See* Affidavit of Service of Gavin Castagna dated January 11, 2023, NYSCEF Doc. 4 (hereinafter the "Castagna Aff."), annexed hereto as **Exhibit D**.)

15. The registered agent for Norma was served with a copy of Plaintiff's Summons and Complaint on January 17, 2023. (*See* Notice of Service of Process and Complaint from Lee Huff Dated January 19, 2023 (hereinafter, the "Huff Notice"), annexed hereto as **Exhibit E**.)

16. On January 25, 2023, Rod Springer, CFO of Norma was served with the Summons and Complaint. *See* Affidavit of Service of Bennett Crip dated January 29, 2023, NYSCEF Doc. 5 (hereinafter the "Crisp Aff."), annexed hereto as **Exhibit F**.)

17. On December 28, 2022, LI Gun Source was served with a copy of Plaintiff's Summons and Complaint via a clerk in the Office of the Secretary of the State of New York. *See* Affidavit of Service of Tim O'Donnell dated December 29, 2022, NYSCEF Doc. 6, hereinafter the "O'Donnell Aff."), annexed hereto as **Exhibit G**.

18. This civil action has not been tried.

19. Defendant Norma voluntarily appears in this action, but reserves all objections, arguments, and defenses to Plaintiff's Complaint. A responsive pleading or motion will be filed in accordance with Rule 81 of the Federal Rules of Civil Procedure.

20. Copies of all process, pleadings, and orders served upon Defendants including Norma are collectively attached to this Notice of Removal. (*See* **Exs. A**, **C**, **D**, **E**, **F** and **G**.)[3]

## II.  NOTICE OF REMOVAL IS TIMELY

21. The time in which Defendant Norma is required by the laws of the State of New York, and/or by the New York Civil Practice Laws and Rules ("CPLR") to move, answer, or otherwise plead in response to Plaintiff's Complaint has not elapsed. *See* CPLR 3012 and CPLR 313.

22. Pursuant to the requirements of 28 U.S.C. § 1446(b), this Notice of Removal is timely filed pursuant to Rule 11 of the Federal Rules of Civil Procedure within thirty (30) days after the receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which Plaintiff's action is based.

## III.  DIVERSITY JURISDICTION EXISTS

23. Removal is authorized by 28 U.S.C. §1441 and is based on the United States District Court's original jurisdiction of the case pursuant to 28 U.S.C. § 1332 because (a) the amount in controversy exceeds $75,000; (b) there is diversity of citizenship between Plaintiff and Defendants Norma, Smith & Wesson, and D&L; and (c) Defendant LI Gun Source has been fraudulently joined and cannot be considered in the diversity jurisdiction determination

---

[3] One other document, Sean P. Kelly's Statement of Authorization for Electronic Filing, NYSCEF Doc. 3, was filed in Suffolk County Supreme Court. That document is annexed hereto as **Exhibit H**.

### A.     The Amount in Controversy Exceeds $75,000.

24.     Plaintiff's Complaint does not specify the amount he seeks in damages.  (*See* **Ex. A**, Plt. Compl.) Nonetheless, based on a preponderance of the evidence, the $75,000 amount-in-controversy requirement found in 28 U.S.C. § 1332 is satisfied in this instance.

25.     Courts should "apply the same liberal rules [to removal allegations] that are applied to other matters of pleading." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87, 135 S. Ct. 547, 553, 190 L. Ed. 2d 495 (2014) quoting H.R.Rep. No. 100–889, p. 71 (1988) (internal quotations omitted).

26.     The determining factor is whether a fact finder might legally conclude that the alleged damages exceed $75,000. *See, e.g., Jean-Louis v. Carrington Mortg. Servs.*, LLC, 849 F. App'x 296, 299 (2d Cir. 2021) (Summary Order) (holding that even though Plaintiff's damages were only $60,000, the Plaintiff's claims "include the Connecticut intentional tort of "civil theft,"[12] for which treble damages are available.  Thus, Jean-Louis's civil theft claim could allow him to recover $180,000, an amount that exceeds the jurisdictional minimum of $75,000.")

27.     A defendant must prove that a plaintiff's verdict may reasonably exceed $75,000 by a preponderance of the evidence.  *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 88*; see also Rhythm of Life Corp. v. Hartford Fin. Servs. Grp. Inc.*, 522 F. Supp. 3d 4, 7 (S.D.N.Y. 2021) ("Defendants have shown by a ponderance of the evidence that the value of the underlying claim for losses of income exceeds the jurisdictional amount."); *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meridien Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

28.     "[A]s specified in [28 U.S.C.] § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff

6

contests, or the court questions, the defendant's allegation." *Fibrix LLC v. Schlumberger Tech. Corp.*, No. 122CV00199JLSMJR, 2022 WL 18215855, at *3 (W.D.N.Y. Nov. 2, 2022), *report and recommendation adopted,* No. 22CV199JLSMJR, 2023 WL 145613 (W.D.N.Y. Jan. 9, 2023) quoting *Ortiz v. JCPenney*, 16-CV-569, 2016 U.S Dist. LEXIS 157926, at *21 (W.D.N.Y. Nov. 15, 2016).

29. "When resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits." *Fibrix LLC*, 2022 WL 18215855, at *3; *Yong Qin Luo v. Mikel,* 625 F.3d 772, 775 (2d Cir.2010) ("[I]f the pleadings are inconclusive, then the courts may look to documents outside the pleadings to other evidence in the record to determine the amount in controversy.") (citation omitted).

30. A plaintiff's refusal to stipulate that damages are limited to $75,000 is an effective admission that that the amount in controversy is greater than $75,000. *Cavaleri v. Amgen Inc.*, No. 20CV1762PKCRML, 2021 WL 878555, at *3 (E.D.N.Y. Mar. 8, 2021), *reconsideration denied,* No. 20CV1762PKCRML, 2021 WL 951652 (E.D.N.Y. Mar. 12, 2021)("Additionally, the cases that Defendants cite do not help them. In all of those cases, the defendants sought an agreement or stipulation from the plaintiffs to limit damages to $75,000 but were unsuccessful— in other words, the plaintiffs in those cases effectively admitted that the amount in controversy was greater than $75,000. There is no indication that Defendants here have attempted to seek any agreement or stipulation from Plaintiff to limit damages to $75,000 and that Plaintiff refused.") (internal citations omitted).

31. In this case, Plaintiff alleges that he was struck in the eye by an unknown object while firing the Subject Revolver and his eye was severely injured and left partially blind. (**Ex. B**, Auletta Email.) Plaintiff alleges that his injuries are "severe and serious personal injuries" to

mind and body, which includes great physical pain and mental anguish. (See **Ex. A**, Plt. Compl. at ¶ 54.)

32.     Finally, when asked if Plaintiff would stipulate that the damages were less than $75,000, Plaintiff refused. (*See* **Ex. B**., Auletta Email.)

33.     For these reasons, the Amount in controversy requirement is met.

### B.    *There is Diversity of Citizenship Between Plaintiff and All Properly Joined Defendants – Norma, Smith & Wesson, and D&L*

34.     Because LI Gun Source is fraudulently joined (as addressed below) and the citizenship of Plaintiff and Defendants Norma, Smith & Wesson, and D&L are diverse, this Court has diversity jurisdiction over this matter. *See* 27 U.S.C. § 1332.

35.     As alleged in the Complaint, Plaintiff is a citizen and resident of Suffolk County, New York. (**Ex. A,** Plt. Compl. at ¶ 1.)

36.     At the time of the commencement of this action and at all times thereafter Defendant Norma has been a Delaware corporation with its principal place of business in Savanna, Georgia. For purposes for diversity, Norma is a citizen of Delaware and Georgia. *See* 28 U.S.C. § 1332(c)(1) (explaining that for the purposes of diversity jurisdiction, a corporation is deemed to be a citizen of its state of incorporation and of the state where it has its principal place of business).

The Complaint alleges that Defendant Smith & Wesson is a New York Corporation. (*See* **Ex A**, Plt. Compl. at ¶ 4). However, in reality it is a Nevada Corporation with its principal place of business in Springfield, Massachusetts. (*See* MA Corporations Search Entity Summary for Smith & Wesson, annexed hereto as **Exhibit I**.) For purposes for diversity, Smith & Wesson is a citizen of Nevada and Massachusetts. *See* 28 U.S.C. § 1332(c)(1).

37.     The Complaint alleges that Defendant D&L is a New York Corporation. (*See* **Ex A**, Plt. Compl. at ¶ 5). However, in reality it is a Rhode Island corporation (*see* Rhode Island

8

Business Portal Summary for D&L, annexed hereto as **Exhibit J**), with its principal place of business in Warwick, Rhode Island. (*See* **Ex. C**, Hughes Aff.) For purposes for diversity, D&L is a citizen of Rhode Island. *See* 28 U.S.C. § 1332(c)(1).

38. Since Plaintiff is a resident of New York and Defendants are not residents of New York, complete diversity exists.

### C. *Defendant LI Gun Source is Fraudulently Joined.*

39. Defendant LI Gun Source is a Limited Liability Company which takes on the citizenship of its members for purposes of diversity. *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 615 (2d Cir. 2019) ("Platinum-Montaur is a limited liability company ("LLC"), which takes the citizenship of all of its members."). While the citizenship of LI Gun Source's members is unknown, this is irrelevant because its citizenship must be disregarded for purposes of diversity jurisdiction because it has been fraudulently joined in order to defeat this Court's jurisdiction pursuant to 28 U.S.C. § 1332. *See MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 388 (S.D.N.Y. 2009) ("Courts regularly review pleadings to determine if there has been a fraudulent joinder of parties and will disregard parties with no real connection with the controversy or who are not a real party in interest.") quoting *Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000) (internal quotations omitted).

40. It is well-settled that removal will not be defeated by collusive or fraudulent joinder. *See MBIA Ins. Corp.*, 706 F. Supp. 2d at 388.

41. "The doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction." *Gallagher v. Boehringer Ingelheim Pharmaceuticals, Inc., et al.*, No. 22-CV-10216 (LJL), 2023 WL 402191, at *5 (S.D.N.Y. Jan. 25, 2023) quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011).

42. Joinder of a defendant will be deemed fraudulent when no cause of action exists against that defendant. *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 393 (S.D.N.Y. 2009) ("To demonstrate that a non-diverse defendant has been fraudulently joined to defeat diversity, a defendant must show, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings (a claim not made here), or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.") citing *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 302 (2d Cir.2004); *see also Gallagher*, 2023 WL 402191, at *5; and *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).

43. In sustaining a claim of fraudulent joinder, the defendant must demonstrate that "there is no reasonable basis to expect that liability would be imposed upon the defendant in state court for the claims asserted in the complaint." *See MBIA Ins. Corp.*, 706 F. Supp. 2d at 394.

44. As the following will demonstrate, Plaintiff's joinder of LI Gun Source does not deprive this Court of jurisdiction because no viable cause of action can be asserted against LI Gun Source based on the facts at issue and the allegations contained within Plaintiff's Complaint. The Complaint improperly lumps all Defendants together and alleges no independent acts by LI Gun Source that could create liability.

### 1. Factual and Legal Allegations in Plaintiff's Complaint Pertaining to LI Gun Source

45. As stated above, there is simply no basis for liability against LI Gun Source. The allegations in Plaintiff's Complaint against LI Gun Source do not give rise to any legally cognizable cause of action under New York law, and, accordingly, LI Gun Source is fraudulently joined and must be ignored for purposes of assessing whether the parties are diverse.

46. According to Plaintiff's theory, Smith & Wesson designed and/or manufactured the Subject Revolver, which Plaintiff believes was defective.

47. D&L sold the Subject Revolver to Plaintiff. Contrary to the incorrect allegation, the Subject Revolver was not, in fact, sold by LI Gun Source to Plaintiff, but rather Plaintiff purchased the revolver from D&L in Rhode Island. (*See* **Ex. B**, Auletta Email.) D&L retained a profit from the sale of the revolver; LI Gun Source did not. (*Id.*)

48. LI Gun Source's only role in this case was the "delivery" of the Subject Revolver to its purchaser post-sale under federal law as the in-state federal firearms licensed transferor.

49. When a firearm is purchased from an out-of-state retailer/dealer, pursuant to federal law, the firearm must be transferred to an in-state federally licensed firearms dealer, in this case, LI Gun Source, to *transfer* the revolver to the purchaser/end user. This all occurs *after* the firearm has been purchased by the retailer purchaser and outside the chain of sale of the firearm.

50. As part of the transfer service, LI Gun Source, as the in-state federally licensed firearms dealer, is required to have the in-state owner of the revolver, in this case Plaintiff, complete the Federal Firearms Transaction Record form (ATF Form 4473); conduct a background check through the federal National Instant Criminal Background Check System ("NICS"); and transfer possession of the revolver to Plaintiff once the paperwork was completed, the waiting period was over (if applicable), and the NICS check was cleared. LI Gun Source does not receive compensation for the sale of the firearm, as the sale was previously completed through D&L. Here, there is no allegation that the firearm could not, or should not, have been transferred to Plaintiff, or that LI Gun Source improperly completed the background check or the transfer to Plaintiff. Thus, LI Gun Source is not in the chain of sale of the Subject Revolver for purposes of strict

liability and there is no possible independent negligence or breach of warranty in its transfer of the revolver to Plaintiff.

### 2. Plaintiff's Strict Product Liability Claim Fails Against LI Gun Source (Count Two)

51. LI Gun Source cannot be held liable under the theories of strict liability or negligence because LI Gun Source was not a *seller* of the Subject Revolver, but rather, was a *provider of a service*, namely the transferor/delivery of the revolver to Plaintiff post-sale. *See Matter of Eighth Jud. Dist. Asbestos Litig.*, 33 N.Y.3d 488, 501, 129 N.E.3d 891, 901 (2019) ("Indeed, where the predicate sale of a good is wholly absent because the transaction was clearly one for services, we agree that strict products liability does not apply.") quoting *Perlmutter v. Beth David Hosp.*, 308 N.Y. 100, 104, 123 N.E.2d 792, 793 (1954) (internal citations and quotations omitted); *see also Schwarz v. FedEx Kinko's Off.*, No. 08 CIV. 6486 (THK), 2009 WL 3459217, at *14 (S.D.N.Y. Oct. 27, 2009) (holding that because it is not the manufacturer, seller, or distributor of the floor mat, the operator of a store with an allegedly defective floormat is not strictly liable for injuries caused by the defect); *Serna v. New York State Urb. Dev. Corp.*, 185 A.D.2d 562, 563, 586 N.Y.S.2d 413, 414 (1992) (holding that, because it is not the manufacturer, seller, or distributor of the elevator, a building owner who installed an allegedly defective elevator is not strictly liable for injuries caused by the defect); *Watford v. Jack LaLanne Long Island, Inc.*, 151 A.D.2d 742, 743, 542 N.Y.S.2d 765, 766 (1989) (holding that, because it is not the manufacturer or seller of the gym equipment, a fitness club is not strictly liable for injuries caused by allegedly defective gym equipment); *Goldfarb v. Teitelbaum,* 540 N.Y.S.2d 263, 264 (2d Dep't. 1989) (use of a product in plaintiff's treatment "did not constitute a 'sale' of the device as required for a cause of action sounding in products liability"; use of the product was "incidental to medical treatment"); *Tucker v. Kaleida Health*, No. 09-CV-719S, 2011 WL 1260117, at *3

(W.D.N.Y. Mar. 31, 2011) ("the nature of the relationship between hospital and patient is that of a service, rather than a sale"; "a patient's receipt of tangible materials is merely an incidental adjunct to the services performed, and the service provider is not a seller for products liability purposes"); *Ethridge v. Samsung SDI Co.*, No. 3:21-CV-306, 2022 WL 1955680, at *2 (S.D. Tex. May 31, 2022) (granting summary judgment in favor of Amazon because Amazon did not design, manufacture, fabricate, assemble, import, test, inspect, warrant, or service the product, and so it could not have done so negligently).

52. The same reasoning is applicable in this matter. Similar to Federal Express or U.S. Postal Service delivering a retailer's package, LI Gun Source provided a third-party *service* to Plaintiff, and cannot be held liable for the alleged product defect as it was not in the chain of sale of the Subject Revolver.

53. LI Gun Source did not design or manufacture the Subject Revolver, install any components, modify the revolver, nor is it the retailer/dealer that sold the revolver to Plaintiff. LI Gun Source only facilitated the transfer for Plaintiff. Because LI Gun Source played no part in the sale, marketing, distribution, testing, manufacturing, or modification of the Subject Revolver, there is no basis for Plaintiff's claims or any causes of action against LI Gun Source.

54. Other courts that have addressed the issue of whether strict product liability applies to in-state firearms transferor have held that it does not. (*See, e.g.*, Examples of Orders Addressing Strict Product Liability for FFLs, annexed hereto as **Exhibit K**.)[4]

---

[4] **Exhibit K** includes *Hulett v. Shoot Straight*, Order Granting Defendant Shoot Straight Tampa, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint, Dkt. No. 21-CA-009783 (13th Dist. Ct., Florida, Dec. 29, 2022); *Cato v. Glock*, Order Granting Defendant Allied Arms Inc.'s Motion to Dismiss Plaintiff's Complaint, Case No. #2019CP1005379 (Charleston Ct. of Comm. Pleas, North Carolina, Jun. 23, 2020); and Defendant's Brief arguing in support of that dismissal. Both matters resulted in the dismissal of the in-state transferor of a claimed defective firearm.

### 3. Plaintiff's Negligence Claim Against LI Gun Source (Count Three) Fails as a Matter of Law.

55. Plaintiff's negligence claim asserted against LI Gun Source has no basis as a matter of law. Plaintiff alleges that LI Gun Source "improperly and negligently manufactur[ed] and produc[ed] said product and or ammunition for use by the general public and otherwise being careless and negligent." (**Ex A**, Plt. Complaint, Count One, at ¶ 93.) But Plaintiff has already conceded that LI Gun Source did not manufacture, produce or sell either the Subject Revolver or the ammunition. (*See* **Ex. B**, Auletta Email.)

56. After the purchase between Plaintiff and D&L was completed, the revolver was transferred to LI Gun Source as the in-state federal firearms licensee so that Plaintiff could complete the background check and receive the revolver in-state as required by federal law. (*Id.*) There is no allegation that Plaintiff was an unlawful purchaser or could not legally own/possess the Subject Revolver. There is no allegation that the firearm could not, or should not, have been transferred to Plaintiff and thus no possible independent negligence in the transfer of the revolver.

57. In addition, Plaintiff has alleged no facts that LI Gun Source had any knowledge of, or reason to know of, an alleged defect in the Subject Revolver, a prerequisite to imposing duty on a Defendant. The Complaint is devoid of any facts of "grounds" to allow for a reasonable inference that LI Gun Source may be liable to Plaintiff. *See Iqbal*, *supra*, 556 U.S. at 678; *Twombly*, *supra*, 550 U.S. at 555. Simply, no independent negligence is asserted given LI Gun Source's role in this matter, and there is no reasonable basis for Plaintiff's negligence claim against LI Gun Source.

### 4. Plaintiff's Warranty Claim Against LI Gun Source (Count One) Fails as a Matter of Law.

58. Plaintiff alleges that:

> That the aforesaid accident was caused solely and wholly by reason that defendant, LONG ISLAND GUN SOURCE LLC, breached its warranties of merchantability and fitness for intended use of the said product and/or ammunition which warranties were both expressed and implied.

(**Ex A**, Plt. Complaint, Count One, at ¶ 76.)

59. In New York, the warranty of merchantability and fitness for intended use is codified in N.Y. U.C.C. Law § 2-314, pursuant to which:

> (1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the <u>seller</u> is a merchant with respect to goods of that kind.
>
> (2) Goods to be merchantable must be at least such as
>
>   (a) pass without objection in the trade under the contract description; and
>
>   (b) in the case of fungible goods, are of fair average quality within the description; and
>
>   (c) are fit for the ordinary purposes for which such goods are used; and
>
>   (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
>   (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
>   (f) conform to the promises or affirmations of fact made on the container or label if any.
>
> (3) Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade.

N.Y. U.C.C. Law § 2-314 (McKinney)(emphasis added).

60. Here, as indicated *supra,* LI Gun Source did not manufacture or sell either the Subject Revolver or the ammunition. It therefore made no warrants, express or implied, as to the merchantability or the fitness of the Subject Revolver or the ammunition Plaintiff used for any

15

purpose whatsoever.  Thus, LI Gun Source cannot potentially be liable for breach of implied warranty.

### D. *Conclusion*

61. Removal is appropriate here because is timely and the Court has diversity jurisdiction.  The amount in controversy requirement is met because Plaintiff is seeking redress for an alleged eye injury that he claims has left him at least partially blind in one eye and he has refused to stipulate that he would be entitled to an award of less than $75,000.

62. In addition, diversity exists between Plaintiff and Defendants.  Specifically, Plaintiff is domiciled in New York and no properly joined Defendant is domiciled in New York.  LI Gun Source's domicile is unknown, but it is fraudulently joined.

63. Plaintiff brings this action against Defendants, for strict liability, negligence, and breach of warranty on the basis that a revolver or ammunition was allegedly defective in design and manufacture.  However, LI Gun Source has no rightful place in this lawsuit because it was not the manufacturer, seller, or distributor of the revolver or the ammunition.  Rather, LI Gun Source simply transferred the revolver, which was previously purchased out of state, from the seller to the purchaser in New York in accordance with federal law.  LI Gun Source did not actually manufacture, design, purchase, or sell the firearm, which is required to potentially be liable for a claimed product defect.  The legal in-state transfer of a firearm after it was previously purchased out-of-state does not place the transferor in the chain of sale for the firearm.  If that were the case, every delivery or logistic company (such as FedEx or the U.S. Postal Service) would be liable for delivery of a claimed defective product.  Here, unequivocally, it was D&L that was the retail seller of the Subject Revolver, and the subsequent transfer/shipment by LI Gun Source post-sale does

not create a potential basis for product liability. Accordingly, Plaintiff fails to state a cause of action against LI Gun Source requiring its dismissal from this lawsuit.

64. For these, and the reasons stated below, removal here is appropriate.

## IV. CONFORMITY WITH THE RULE OF UNANIMITY.

65. When several defendants are sued in a state court on a joint cause of action, generally, the suit may not be removed to federal court on diversity grounds unless all the defendants who have been properly served join in the removal. *See Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012) ("District courts within this Circuit, however, have consistently interpreted the statute as requiring that all defendants consent to removal within the statutory thirty-day period, a requirement known as the rule of unanimity. Although we have not yet advised what form a consent to removal must take, we agree with the district court that the remaining defendants must independently express their consent to removal.") (internal quotations and citations omitted). *See also Gallagher*, 2023 WL 402191, at *5.

66. However, the law does not require consent from a defendant who has been fraudulently joined. *Romano v. Am. States Ins. Co.*, 295 F. Supp. 3d 307, 318 (W.D.N.Y. 2017) ("The rule of unanimity may be excused if the defendants were fraudulently joined[.]") citing *Sherman v. A.J. Pegno Constr. Corp.,* 528 F.Supp.2d 320, 330 (S.D.N.Y. 2007),

67. In this case, even though consent is not required from LI Gun Source, Norma has obtained consent to remove the case to federal court on the basis of diversity jurisdiction from Smith & Wesson, D&L, and LI Gun Source. (*See* Consents of Defendants, annexed hereto as **Exhibit L** .)

## V. REMOVAL TO THIS DISTRICT IS PROPER.

68. Pursuant to 28 U.S.C. §§ 1441, *et seq.*, the right exists to remove this case from Supreme Court of the State of New York, County of Suffolk to the United States District Court for the Southern District of New York, which embraces the place where the action is pending.

## VI. CONCLUSION.

69. Pursuant to 28 U.S.C. § 1446, a copy of this Notice of Removal is being served on Plaintiff.

70. Promptly upon filing of this Notice of Removal, Norma shall file a copy with the Clerk of the Suffolk County Supreme Court and serve a copy upon all parties.

71. Defendant Norma reserves the right to amend or supplement this Notice of Removal and reserves all defenses.

72. Defendant Norma requests a trial by jury.

**WHEREFORE**, Defendant Norma prays that this case be removed from the Supreme Court of the State of New York, County of Suffolk, where it was pending, to this Court, for the exercise of jurisdiction over this action as though this case had been originally instituted in this Court.

Dated: February 8, 2023
Florham Park, NJ

        Respectfully submitted,

        **PISCIOTTI LALLIS ERDREICH**

By:   */s/ Richard F. Brueckner*
      Richard F. Brueckner
      Ryan L. Erdreich
      30 Columbia Turnpike, Suite 205
      Florham Park, New Jersey 07932
      Telephone:  (973) 245-8100
      Facsimile:   (973) 245-8101
      rbrueckner@pisciotti.com
      rerdreich@pisciotti.com

      *Counsel for Defendant*
      *Norma Precision Inc.*

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically on February 8, 2023. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and listed below. Any other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

    Respectfully submitted,

    **PISCIOTTI LALLIS ERDREICH**

By:   */s/ Richard F. Brueckner*
      Richard F. Brueckner