```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
KENNETH PIKOULAS,                                           :
                                                            :
                              Plaintiff,                    :   MEMORANDUM DECISION AND
                                                            :   ORDER
               -against-                                    :
                                                            :   23-cv-1051 (BMC)
SMITH & WESSON BRANDS, INC.,                                :
                                                            :
                              Defendant.                    :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

This case underscores the virtues of proper eye protection and of careful expert examination. After suffering an eye injury while shooting a revolver, plaintiff sued several defendants under various product-liability theories. The only remaining defendant, the gun's manufacturer, has moved to exclude plaintiff's sole expert and for summary judgment. Because the expert did not test hypotheses pivotal to his bottom-line conclusion, defendant's motions are both granted.

## BACKGROUND

On a late-December morning at an upstate New York cabin, plaintiff Kenneth Pikoulas was shooting, for the first time, his new Smith & Wesson Model 586 revolver at a practice target. He fired 29 rounds without issue, but upon firing a 30th, he "felt something hit [him] in the eye." His vision became "blurry and cloudy," and he hurriedly drove himself to a hospital. There, his treating physicians could not diagnose the problem, but they referred him to a specialist, who was more successful. The specialist found and dislodged from Pikoulas' right eye a "metal foreign body" measuring an 1/8 inch, or 0.2 x 0.1 x 0.1 centimeters.

Alleging to have "lost complete forward vision in his right eye as a result of the incident," Pikoulas filed this suit in New York state court against defendant Smith & Wesson Brands, Inc.; two firearms retailers; and an ammunition manufacturer. The complaint is no model of clarity, but the parties agree it asserts three claims: a negligent manufacturing-defect claim, a strict-liability manufacturing-defect claim, and a breach-of-warranty claim. Defendants timely removed the action, and it came before the undersigned.

During discovery, Pikoulas retained an expert – Vlad Lucuta – to investigate the cause of his injury. Lucuta inspected Pikoulas' Model 586 twice. At the first inspection, he observed that, except for a small piece of shrapnel caught between the revolver's barrel and frame, the rest of the bullet debris had exited the gun.[1] He also noticed copper residue from a bullet jacket and "severe . . . striations" on the revolver's throat, suggesting abnormally "high friction between the projectile's copper jacket and barrel steel." This type of wear, he opined, can "be caused by a slight misalignment of the cylinder with the barrel." His observations led him to believe that "the incident that caused the accident is very likely to be due to possible faults with the revolver itself, especially the alignment of the cylinder to the barrel forcing cone."

At the second inspection, Lucuta and defendants' experts tested, among other things, the alignment between the revolver's cylinder and barrel. To do so, the experts relied on the aptly named "cylinder alignment test," which entails inserting a rod down the barrel and turning each chamber so the rod can enter. If the rod can frictionlessly enter every chamber, its cylinder and

---

[1] For those unfamiliar with firearms lingo, a "barrel" is the tube through which a bullet travels before exiting a gun, a "cylinder" is drum-shaped container on a revolver that feeds bullets into the barrel, a "chamber" is the part of a cylinder in which one inserts bullets, a "throat" is the part of a cylinder connected to the barrel, a "forcing cone" is the part of the barrel that connects to the cylinder, and a "bullet jacket" is the metal wrapped around a bullet's core. See Michael Crites, A Firearms Glossary, American Firearms (last visited June 11, 2025) https://www.americanfirearms.org/firearms-glossary/ [https://perma.cc/29NF-PT88]

barrel are properly aligned. The initial test conducted by Smith & Wesson's expert unearthed no flaws; the rod entered the chambers with ease. But Lucuta's subsequent examination revealed some "play" between one of the six chambers and the barrel. Specifically, when Lucuta applied manual pressure to the cylinder's right side, the alignment rod would not properly slide into one of the chambers.

The experts also remotely fired the gun several times in a controlled firing area. They placed a gelatin mannequin head just behind the revolver, simulating where Pikoulas' head would have been at the time of injury. The first 28 bullets were fired from only the chamber that Lucuta identified to have an alignment issue, and the next 12 were fired from all six chambers. After the live firing, Lucuta again inspected the inside of the barrel and noticed that the bullet-jacket residue and striations had disappeared. He also noticed, upon review of a recording of the firings, that the barrel expelled gas sideways during some shots.

Armed with these observations and with a review of Smith & Wesson's manufacturing protocols, Lucuta concluded, "based upon a reasonable degree of firearms certainty," that a manufacturing defect caused the cylinder alignment issue which in turn caused the shrapnel to propel back into Pikoulas' eye. After the close of expert discovery, Smith & Wesson – now the only remaining defendant – moved to exclude Lucuta's testimony and for summary judgment. I rule on each motion in turn.

## DISCUSSION

### I.     Motion to Exclude Expert Testimony

Federal Rule of Evidence 702 charges district courts "with the responsibility of acting as gatekeepers to exclude unreliable expert testimony." Forte v. Liquidnet Holdings, Inc., 675 F.

App'x 21, 23 (2d Cir. 2017).  Proponents of expert testimony must show, by a preponderance of the evidence, that

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Applying this rule, trial judges ensure that a proffered expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).  "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002).  For this reason, "[t]he failure to test a theory of causation can justify a trial court's exclusion of the expert's testimony." Brooks v. Outboard Marine Corp., 234 F.3d 89, 92 (2d Cir. 2000).

These principles compel me to exclude Lucuta's expert testimony.  Most glaringly, the testimony does not clear Rule 702's first hurdle; it would not "help the trier of fact to understand the evidence or to determine a fact in issue."  Pikoulas admits that he did not manually bias the right side of his revolver while firing, and neither he nor Lucuta explain how an equivalent force could have affected the gun.  Even a reliable expert opinion that a bullet could fragment when the cylinder was subjected to rightward pressure would therefore be of little help to a jury tasked with determining what caused the misfiring here.

And, compounding matters, the report's methodology is far from reliable.  It hypothesizes that "the slightest pressure" affected the gun's cylinder when Pikoulas fired the

4

30th shot, which caused a misalignment between the barrel and cylinder, which stripped the jacket from the bullet as it passed into the barrel, which led to the bullet jacket ejecting backwards into Pikoulas' eye.  Yet Lucuta tested only the first two links in his chain of causal hypotheses; he never tested whether the misalignment could have stripped the bullet jacket or whether a stripped jacket could have flown backwards into the shooter's eye.  He observed that, sometimes, the revolver expels gas from its sides and that, under manual pressure, the sixth cylinder misaligns with the barrel.  But in none of the test firings did the misalignment fragment a bullet, nor did the gas expel any particle back towards the mannequin's face.

In fact, the data he collected and the science on which he relies both contradict his conclusion.  Lucuta admitted that "the alignment of [the cylinder] to the barrel never created or caused any stripping of bullet jacket material" during the test firing.  He admitted that he didn't observe "any particles or debris ejected rearward into the ballistic gel dummy head."  And he admitted he was not "aware of any published research in the scientific community that talks about the pathways for expulsion of shrapnel through a barrel cylinder gap of a revolver."  His principles and methods "are simply inadequate to support the conclusions reached." Amorgianos, 303 F.3d at 266.

**II.     Summary Judgment**

Having determined that Rule 702 bars admission of Lucuta's expert testimony, I can resolve the summary judgment motion in short order.  Pikoulas' three claims have one common element: causation.  To prevail on a negligent manufacturing-defect claim, on a strict-liability manufacturing-defect claim, or on a breach-of-warranty claim, a plaintiff must show that the defendant's product proximately caused his alleged injury.  Oden v. Bos. Sci. Corp., 330 F. Supp. 3d 877, 887, 890, 895 (E.D.N.Y. 2018).  And when "defendant's expert states that a defect

5

in its product could not be the cause of the accident, plaintiff must rebut this assertion with admissible expert testimony." Derienzo v. Trek Bicycle Corp., 376 F. Supp. 2d 537, 551 (S.D.N.Y. 2005).

Plaintiff cannot do so here. Because his proffered expert testimony is inadmissible, he cannot rebut Smith & Wesson's expert testimony that the revolver did not cause his injury. In turn, no reasonable jury could find in his favor on any claim. Smith & Wesson is accordingly entitled to summary judgment.

## CONCLUSION

Smith & Wesson's Motion for Summary Judgment and Rule 702 Motion to Exclude the Testimony of Vlad Lucuta [33] is granted.

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       June 12, 2025